IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROBERT L. GALLEGOS,

          Plaintiff,

vs.                                                             Civ. No.  13-0716 JCH/SCY

CITY OF ALBUQUERQUE, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

In this case Plaintiff Robert Gallegos ("Gallegos") claims that his constitutional rights were violated by the City of Albuquerque ("the City") and police officer Jared Frazier ("Frazier") when Frazier used excessive force in arresting Gallegos and denied Gallegos proper medical care for his injuries at the time of arrest. The case is before the Court on Frazier's *Motion for Summary Judgment On the Basis of Qualified Immunity* [Doc. 54]. After reviewing the motion, response, and reply as well as the exhibits thereto, the Court concludes that Frazier's motion should be granted because Gallegos has failed to meet his burden to show that his constitutional rights were clearly established at the time such that a reasonable person in Frazier's position would have known that his conduct violated Gallegos' rights.

**LEGAL STANDARD**

Summary judgment generally is appropriate when a court determines that "'there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law.'" *Thrasher v. B & B Chem. Co.*, 2 F.3d 995, 996 (10th Cir. 1993) (citation omitted). Under Rule 56(c), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

To carry its initial burden, the moving party need not negate the nonmoving party's claim. *See Allen v. Muskogee, Okl.*, 119 F.3d 837, 840 (10th Cir. 1997), *cert. denied sub nom. Smith v. Allen*, 522 U.S. 1148 (1998). "'Instead, the movant only bears the initial burden of 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). A plaintiff cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment but rather must produce some specific factual support of its claim. *See Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988); *Fritzcshe v. Albuquerque Mun. Sch. Dist.*, 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Upon a motion for summary judgment, a court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997). If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to

judgment in its favor as a matter of law. *See, e.g., Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

The standard for analyzing a motion for summary judgment shifts slightly if, as here, a defendant raises qualified immunity as a defense in a lawsuit brought under 42 U.S.C. § 1983. Qualified immunity bars Section 1983 suits against defendants in their individual—but not official—capacities. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 167 (1985) (citations omitted). The qualified immunity defense was created to shield public officials "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). It provides immunity from suit and not merely from liability. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It therefore spares defendants the burden of going forward with trial. *See Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995), *abrogated on other grounds, Saucier v. Katz*, 533 U.S. 194 (2001).

Once a moving party raises the defense of qualified immunity, the nonmoving party must (1) assert facts which, if true, would constitute a violation of a constitutional right, and (2) demonstrate that the "right was clearly established at the time such that a reasonable person in the [movant's] position would have known that [the] conduct violated the right." *Garramone v. Romo*, 94 F.3d 1446, 1449 (10th Cir. 1996) (citations omitted); *see also, e.g., Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). The first part of this inquiry requires a court to determine whether the parties' submissions, viewed in the light most favorable to the plaintiff, could show the officers' conduct violated a constitutional right. *Cf. id.* at 201. The second part of the inquiry requires a court to "assess[] the objective legal reasonableness of the action at the time of the alleged violation and ask[] whether 'the right was sufficiently clear that a reasonable officer would understand that what he [or she was] doing violates that right.'" *See Medina v. Cram*, 252

3

F.3d 1124, 1128 (10th Cir. 2001) (quotation omitted); *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citations omitted). The Court may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *accord Green v. Post*, 574 F.3d 1294, 1299 (10th Cir. 2009).

If a nonmoving party fails to satisfy its two-part burden, a court must grant the moving party qualified immunity. *See Medina*, 252 F.3d at 1128. If, and only if, the plaintiff establishes both elements of the qualified immunity test does a defendant then bear the traditional burden of showing "'that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.'" *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000) (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995)). In other words, although the court "review[s] the evidence in the light most favorable to the nonmoving party, the record must clearly demonstrate the plaintiff has satisfied his heavy two part burden; otherwise, the defendants are entitled to qualified immunity." *Medina*, 252 F.3d at 1128 (citation omitted). However, if the nonmoving party successfully demonstrates the violation of a clearly established right, the moving party assumes the normal summary judgment burden of demonstrating that no genuine issue of material fact exists that would defeat its claim for qualified immunity. *See Woodward v. City of Worland*, 977 F.2d 1392, 1396-97 (10th Cir. 1992) (citations omitted).

## FACTUAL BACKGROUND

On summary judgment, the Court does not make credibility determinations or weigh the evidence. Rather, the Court views the evidence in the light most favorable to the non-moving party—in this case, Gallegos—and resolves all factual disputes in his favor.[1] With that in mind, for purposes of the motion currently before it, the Court finds the facts as follows.

On the evening of June 5, 2012, at approximately 9:49 p.m., Gallegos was driving a motorcycle southbound on Tramway Boulevard in Albuquerque. Second Am. Cmplt. [Doc. 25] at ¶¶ 21-22, 24. At the intersection of Tramway and Cloudview, Gallegos collided with another

---

[1] The Local Rules for the United States District Court for the District of New Mexico address with specificity the manner in which the moving and responding parties must address the facts in a motion for summary judgment. Specifically, D.N.M. LR-56.1(b) provides:
- The memorandum in support of the [Rule 56] motion must initially set out a concise statement of all of the material facts as to which movant contends no genuine issue exists. The facts must be numbered and must refer with particularity to those portions of the record upon which movant relies.
- A memorandum in opposition to the motion must contain a concise statement of the material facts as to which the party contends a genuine issue does exist. Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the opposing party relies, and must state the number of the movant's fact that is disputed. All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted.

Although Frazier complied with this Rule, Gallegos did not. Gallegos simply submitted his own list of undisputed material facts, and made no effort to identify by number the facts provided by Frazier that he is disputing. This puts the Court in the position of having to sort through both parties' list of facts in order to determine where they are in dispute. Under the Rule, the Court would be justified in simply concluding that all of Frazier's facts should be deemed admitted.

In the signature block on his response brief, Gallegos' counsel identified himself as "pro hac vice." Of course, attorneys who are not licensed to practice in the District of New Mexico may, under certain circumstances, still practice in this Court. However, they are not relieved of the duty to know and comply with the Local Rules. Still, because this appears to be Plaintiff's counsel's first appearance in this Court, the Court will not deem Frazier's facts to be admitted *on this occasion*. However, the Court will not overlook Gallegos' counsel's violations of Local Rules in the future.

vehicle. *Id*. at ¶ 22. A witness called 911 to report the accident. Doc. 64-2 at 1. According to the dispatch log, the caller stated that the driver of the motorcycle (now known to be Gallegos) got up and ran southbound on Tramway. *Id*. At some point, Gallegos made his way to a nearby residential area. At 10:04 p.m. a resident called 911, stating that a "male subject" with "blood all over his arm" was banging on his door. Exh. E, Doc. 54-2 at 2. About a minute and a half later, two officers arrived on the scene. Defendant Frazier was dispatched to evaluate Gallegos for possible signs of intoxication. Exh. C, Doc. 54-1 at 4, ¶ 3. After going first to the scene of the accident, at approximately 10:13 p.m. Frazier arrived at the residential area where Gallegos had been found. *Id*. at ¶ 4-6; Exh. E, Doc. 54-2 at 2.

When Frazier arrived, he saw Gallegos wearing handcuffs in the front yard of a residence. Exh. C, Doc. 54-1 at ¶ 7. After speaking with another officer, Tommy Benavides, Frazier spoke with at least one of the Albuquerque Ambulance paramedics on the scene. Exh. E, Doc. 54-2 at 2; Exh. 1, Doc. 64-3 at 7, 22, and 67 of 115. Of the two paramedics who were there, Rachael Wennekamp was the lead paramedic and was the only one who spoke to the police at the scene. Exh. 1, Doc. 64-3 at 67, 85 of 115. Wennekamp spoke to the officer that she believed to be the lead officer in charge. *Id*. at 67, 70, 85. That officer told Wennekamp that the patient did not need to be assessed and that the paramedics could cancel the call. *Id*. at 67, 74, 76, 86. As a result, the paramedics left without assessing Gallegos. *Id*. at 67, 71, 74, 85-86; Exh. 3, Doc. 64-4 at ¶ 18.

Frazier did not read Gallegos his *Miranda* rights.[2] Exh. 3, Doc. 64-4 at ¶ 34. However, officers (including Frazier) did question Gallegos while Gallegos sat with his arms handcuffed

---

[2] Frazier asserts that he did read Gallegos his *Miranda* rights, but that his lapel camera malfunctioned and therefore did not record it. Doc. 54-1 at ¶ 10. There is no independent

6

behind his back. *Id.* at ¶ 12-13; Exh. C, Doc. 54-1 at ¶ 11. When officers initially arrived, Gallegos did not consent to take a breathalyzer test. Exh. 1, Doc. 64-3 at 101 of 115; Exh. 3, Doc. 64-4 at ¶¶ 15-17. However, after officers sent the paramedics away, Frazier told Gallegos that he would receive no medical treatment until he took the test; as a result, Gallegos consented.[3] Exh. 1, Doc. 64-3 at 97, 99-100, 105-06, and 108 of 115; Exh. 3, Doc. 64-4 at ¶ 15-17, 23-24. Gallegos asked Frazier and the other officers to please let the paramedics examine him. Exh. 1, Doc. 64-3 at 99 of 115; Exh. 3, Doc. 64-4 at ¶ 14; Exh. D, Doc. 54-2; Exh. 12, Doc. 64-13.[4]

Frazier recorded at least a portion of his interaction with Gallegos with his lapel camera. *See* Exh. D, Doc. 54-2; and Exh. 12, Doc. 64-13. That video recording shows Gallegos denying having a motorcycle accident and running to the residential area from the scene of an accident. Gallegos begged Frazier to let the paramedics look at his ankle. Frazier says, "You got a little scuff on it." Frazier accuses Gallegos of lying; Gallegos denies it. Gallegos says, "I'm hurting." Frazier responds, "That's what happens when you fall off a motorcycle." Frazier directs Gallegos, who is out of frame, to stand up. There is a sound of movement, and Gallegos can be heard crying out in pain. It is impossible to tell from the video alone if Frazier or anyone else is touching Gallegos at this point. In his affidavit, Gallegos states that he believes that Frazier grabbed his left shoulder and used the handcuffs as leverage to raise Gallegos to a standing

---

evidence that Frazier read Gallegos his rights. As it must on a motion for summary judgment, the Court resolves these conflicting accounts in favor of Gallegos.

[3] In the criminal case against Gallegos for driving under the influence of alcohol, the state judge found that the evidence of Gallegos' breathalyzer test should be suppressed on the grounds that officers coerced his consent by withholding medical treatment. Exh. 1, Doc. 64-3 at 114 of 115.

[4] A compact disc containing the recording from Frazier's lapel camera is lodged in the record as Defendant's Ex. D, Doc. 54-2. Gallegos attached a transcript of that recording as Ex. 12, Doc. 64-13. The Court has examined both the recording and the transcript.

position, tugging on Gallegos' shoulder harder when he saw that this caused Gallegos pain. Doc. 64-4 at ¶ 22. Then Frazier directs Gallegos to roll over, and there is a sound of heavy breathing and struggling. Frazier directs Gallegos to bring his knees up, and then to sit up. Then, he directs Gallegos to stand. Gallegos says, "Please, help me stand. I can't stand," to which Frazier says, "Stand up. We're helping you." Frazier then says, "This is what happens when you fall off a motorcycle." Gallegos again denies falling off a motorcycle. Then, the camera perspective shifts so that Gallegos becomes visible in the frame. His left arm and right shoulder are bloody and appear raw; it appears that large patches of skin have been scraped off. Frazier says, "That is called road rash." Gallegos denies having road rash and again denies falling off a motorcycle. Gallegos asks to be taken to a hospital for treatment for his ankle "because, I promise you, it's broken." Fraser responds, "That's why you ran a quarter of a mile?" After additional accusations by Frazier and denials of lying by Gallegos, Gallegos again says "I'm hurting," and asks for medical attention for his ankle. In an exchange with another officer, Frazier observes that Gallegos "has road rash all over him." A short time later, Frazier and another officer take Gallegos by the arm and walk him toward a police cruiser. Fraser tells Gallegos that he is under arrest for DWI, fleeing the scene of an accident, and "being an absolute liar." As the officers put him in the car, Gallegos says that he wants a breathalyzer "as soon as possible."

Gallegos was seated in the back of the patrol car with his hands cuffed behind him. Exh. 3, Doc. 64-4 at ¶ 25, Exh. C, Doc. 54-1 at ¶ 28. That position caused pain in his injured left shoulder and right ankle. Exh. 3, Doc. 64-4 at ¶ 25. On the drive to the police station, Gallegos continued to ask to be taken to the hospital, to which Frazier responded, "Be a man already," which Gallegos interpreted to mean that Frazier wanted him to confess before he would take Gallegos to the hospital. *Id.* at ¶ 26-27. Frazier drove Gallegos to the Prisoner Transport Center

("PTC") in order to administer a breathalyzer test. Exh. C, Doc. 54-1 at ¶ 29. When they arrived at the PTC, Frazier put his right arm under Gallegos' left shoulder to help him balance as Gallegos hopped on his left foot, causing additional pain to Gallegos' shoulder. Exh. 3, Doc. 64-4 at ¶ 29. Frazier and Gallegos arrived at the PTC at 10:42 p.m. Exh. C, Doc. 54-1 at ¶ 30.

At the PTC, Gallegos' injuries prevented him from being able to sit comfortably. Exh. 3, Doc. 64-4 at ¶ 30. He was hunched over in pain, bleeding, and asking for medical help. *Id*. Frazier administered a breathalyzer test, Exh. C, Doc. 54-1 at ¶ 31, and then Gallegos heard a man behind a counter tell Frazier that they were not going to accept Gallegos into the PTC because he did not believe that the paramedics had cleared Gallegos. Exh. 3, Doc. 64-4 at ¶ 31-32. Frazier called the paramedics, who arrived at the PTC to examine Gallegos at 11:33 p.m. Exh. C, Doc. 54-1 at ¶ 34-35; Exh. G, Doc. 54-2 at 5 of 6; Doc. 64-4 at ¶ 33.

The physician who examined Gallegos a few hours later noted severe road rash to approximately 20% of Gallegos' body, a likely grade 3 left shoulder joint separation, and right ankle sprain. Exh. H, Doc. 54-3.

## **PLAINTIFF'S COMPLAINT**

In his Second Amended Complaint [Doc. 25], Gallegos alleges several violations of his constitutional rights. Although he has grouped them together in a somewhat tangled fashion, it appears that he is asserting the violation of the following rights by Frazier: substantive due process under the Fourteenth Amendment, *id*. at ¶ 126-127, 145; freedom from cruel and unusual punishment under the Eighth Amendment, *id*. at ¶ 126, 135; freedom from unlawful search and

seizure, as well as excessive force, under the Fourth Amendment, *id*. at ¶ 128, 134; and deprivation of timely medical care, *id*. at ¶ 130-133, 141.[5]

## DISCUSSION

Frazier has filed a motion for summary judgment on the grounds that he has qualified immunity for Gallegos' claims for (1) use of excessive force under the Fourth Amendment and (2) deprivation of timely medical care. Doc. 54 at 7-8. Frazier's motion does not address any of Gallegos' other possible § 1983 claims. However, in his response brief [Doc. 64], Gallegos muddies the waters significantly by arguing that he "has a Fifth Amendment right to be free from the infliction of pain and suffering used as coercion to overcome his right to remain silent" and that Frazier "us[ed] the denial of medical assistance to coerce consent to a confession." Doc. 64 at 1-2. Gallegos' response goes on to state that "[t]his is a due process case," and that under the Fifth Amendment, his confession was coerced because it was obtained through unnecessary infliction of pain and without a *Miranda* warning. *Id*. at 18-19.

As a threshold matter, the Court must clarify that it will not address a claim of violation of the Fifth Amendment right against self-incrimination for the fundamental reason that Gallegos did not attempt to plead such a claim. In his Second Amended Complaint [Doc. 25], Gallegos mentions the Fifth Amendment only once, in a paragraph that enumerates the federal statutes and constitutional amendments that serve as the basis for this Court's jurisdiction. Doc. 25 at ¶ 9. At no point in the portion of the Second Amended Complaint that enumerates Gallegos' causes of action does he mention anything about the Fifth Amendment or the right against self-incrimination. Thus, although both parties discuss the right against self-incrimination in their

---

[5] The Court expresses no opinion as to whether or not Gallegos's Second Amended Complaint has adequately stated a claim on any constitutional cause of action that is not the subject of Frazier's present motion.

briefs, it does not appear to the Court that this constitutional claim was pled in the first instance. For this reason, it is not clear to the Court why the parties spend the time they do in discussing it.

Further, even if Gallegos had plead a claim for violation of the right against self-incrimination, that claim would not be legally viable. Gallegos argues in his response that although initially he exercised his right against self-incrimination by refusing to consent to the breathalyzer test, Frazier coerced him into waiving that right by refusing to provide Gallegos with medical treatment until he took the breath test. Thus, Gallegos argues that Frazier violated his right against self-incrimination and that the decision of the state court judge excluding the breathalyzer results in the state court DUI case against him was proper. *See* Doc. 64 at 18. However, it is the very decision of the state court judge suppressing the breathalyzer evidence that would preclude Gallegos from recovering under § 1983 for violation of his right to self-incrimination. In *Chavez v. Martinez*, 538 U.S. 760 (2003), the Supreme Court found that the right to self-incrimination is not violated unless and until a coerced statement is used against a defendant in a criminal case. In that case, while respondent Martinez was being treated for gunshot wounds received during an altercation with police, police officer Chavez interrogated him without giving Martinez *Miranda* warnings. *Id*. at 764. Although he was never charged with a crime and his statements to Chavez were never used against him in any criminal proceeding, Martinez filed a § 1983 claim asserting violation of his Fifth Amendment right against self-incrimination and his Fourteenth Amendment substantive due process right to be free from coercive questioning. *Id*. at 764-65. The Supreme Court held that officer Chavez was entitled to qualified immunity on the Fifth Amendment claim because Martinez's statements were never admitted as testimony against him in a criminal case, and therefore Martinez was never forced to be a "witness" against himself. *Id*. at 767. Similarly, the Court found that Chavez's failure to

read Martinez his *Miranda* rights could not be grounds for a § 1983 action. *Id*. at 772. Thus, Frazier's alleged failure to read Gallegos his *Miranda* rights is not actionable in this case. However, the Supreme Court also pointed out that its rulings did not preclude all civil claims for violations of constitutional rights under certain circumstances:

> Our views on the proper scope of the Fifth Amendment's Self-Incrimination Clause do not mean that police torture or other abuse that results in a confession is constitutionally permissible so long as the statements are not used at trial; it simply means that the Fourteenth Amendment's Due Process Clause, rather than the Fifth Amendment's Self-Incrimination Clause, would govern an inquiry in those cases and provide relief in appropriate circumstances.

*Id*. at 773.

Having clarified that the Second Amended Complaint presents no claim for violation of the right against self-incrimination, the Court turns to the question of whether Frazier is entitled to qualified immunity on Gallegos' Fourth Amendment excessive force claim and Fourteenth Amendment substantive due process claim for violation of the right to timely medical care.

I.     **USE OF EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT**

"Excessive force claims can be maintained under the Fourth, Fifth, Eighth, or Fourteenth Amendment . . . and each carries with it a very different legal test." *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010). For instance, although an excessive force claim brought under the Fourth Amendment depends on the objective reasonableness of the defendant's actions, the same claim brought under the Fourteenth Amendment turns on additional factors, including "the motives of the state actor." *See id*. at 1325-26. Thus, a district court evaluating an excessive force claim must first "isolate the precise constitutional violation with which [the defendant] is

charged" because "[t]he choice of amendment matters." *Id.* at 1325 (citing *Baker v. McCollan*, 443 U.S. 137, 140 (1979)); *see also Graham v. Connor*, 490 U.S. 386, 393-95 (1989).

Determining which amendment applies to an allegation of excessive force requires consideration of "where the [plaintiff] finds himself in the criminal justice system." *Porro*, 624 F.3d at 1325. Any force used "leading up to and including an arrest" may be actionable under the Fourth Amendment's prohibition against unreasonable seizures. *Id.* at 1325-26. By contrast, claims of excessive force involving convicted prisoners arise under the Eighth Amendment. *Id.* "And when neither the Fourth nor Eighth Amendment applies—when the plaintiff finds himself in the criminal justice system somewhere between the two stools of an initial seizure and post-conviction punishment—we turn to the due process clauses of the Fifth or Fourteenth Amendment and their protection against arbitrary governmental action by federal or state authorities." *Id.* at 1326 (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998)). It is well-established that the Fourteenth Amendment governs any claim of excessive force brought by a "pretrial detainee"—one who has had a "judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest." *Bell v. Wolfish*, 441 U.S. 520, 536 (1979) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975).

Applying these principles to this case, the Court concludes that the Fourth Amendment applies here because Gallegos alleges the use of excessive force by Frazier in the events leading up to and during his arrest. Fourth Amendment excessive force claims are analyzed under the objective reasonableness standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The reasonableness of an officer's conduct must be assessed "from the perspective of a reasonable officer on the scene," recognizing the fact that the officer may be "forced to make split-second judgments" under stressful and dangerous conditions. *Id.* at 396-97. The

13

Fourth Amendment standard requires inquiry into the factual circumstances of every case; relevant factors include the crime's severity, the potential threat posed by the suspect to the officer's and others' safety, and the suspect's attempts to resist or evade arrest. *Id*. at 396.

The Court turns now to the question of whether Frazier is entitled to qualified immunity for Gallegos' excessive force claim. That, in turn, raises the question of whether Frazier violated the Fourth Amendment prohibition against the use of excessive force by (a) denying Gallegos medical care at the scene of the arrest, instead delaying his examination by paramedics until after they arrived at the PTC (a delay that was just over an hour from the time Frazier first encountered Gallegos), and (b) pulling Gallegos to a standing position and making him walk to the patrol car despite the fact that Gallegos stated that his ankle and shoulder were injured.

As discussed above, because Frazier has raised the defense of qualified immunity, the burden shifts to Gallegos to show not only that his Fourth Amendment rights were violated, but also that there was clearly established law prohibiting Frazier's conduct "of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. —— , 136 S. Ct. 305, 308 (2015). In order to show that the law was clearly established at the time of the defendant's conduct, a plaintiff must identify an on-point Supreme Court or published Tenth Circuit decision, or show that "the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010) (internal quotation marks omitted).

Importantly, a case that generally outlines the constitutional right at issue is insufficient. "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as

the right to be free from unreasonable searches and seizures." *City of San Francisco v. Sheehan*, — U.S. —, 135 S. Ct. 1765, 1776 (2015). The clearly established right at issue should be defined " 'on the basis of the specific context of the case.'" *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (quoting *Tolan v. Cotton*, — U.S. —, 134 S. Ct. 1861, 1866 (2014)). As the Supreme Court very recently reminded us,

> Today, it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined at a high level of generality. As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case. Otherwise, [p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."

*White v. Pauly*, — U.S. —, 137 S. Ct. 548, 552 (2017) (internal citations and quotations omitted).

Here, a review of Gallegos' brief shows that he has not met his burden to identify a "particularized" Supreme Court or published Tenth Circuit decision, or show that "the clearly established weight of authority from other courts, which would prohibit the specific conduct at issue in this case. Gallegos argues that "Officer Frazier's manner of seizure, handling during detention, and denial of prompt medical access used to inflict punishment constitutes excessive use of force." Doc. 64 at 19-20. However, lacking from his brief is citation to or discussion of any case in which law enforcement officers are accused to violating the Fourth Amendment by withholding medical treatment from an injured arrestee at the scene of the arrest, or by the way they handled him during his arrest. Instead, Gallegos cites *Graham v. Connor*, 490 U.S. 386 (1989) and *Bell v. Wolfish*, 441 U.S. 520 (1979) for extremely general propositions regarding the "objective reasonableness" standard and violations of due process. Yet, neither case bears any factual similarity to this one. *Bell* stems from allegations that practices at a short-term custodial

facility violated the rights of pretrial detainees. 441 U.S. at 523-24. These practices included "double bunking" (the confinement of two inmates in individual rooms originally intended for single occupancy), *id*. at 530-31, the prohibition of hardcover books not mailed directly from publishers or bookstores, *id*. at 548-50, prohibition of packages of food and personal items from outside the facility, *id*. at 553, a requirement that detainees remain outside their rooms during inspections by prison officials, *id*. at 555-56, and the practice of conducting visual body-cavity searches of inmates, *id*. at 557-58. It did not address the use of excessive force, but rather unreasonable search and seizure. *Graham* is closer. In that case, Graham, a diabetic, went to a convenience store to purchase orange juice to counteract the onset of an insulin reaction. 490 U.S. at 388. After seeing a long line at checkout, Graham quickly left the store to go to a friend's house instead. *Id*. at 388-89. A watching police officer became suspicious after seeing Graham hastily enter and leave the store. He followed the car in which Graham was a passenger and made an investigative stop, ordering Graham and the driver to wait while he found out what had happened in the store. *Id.* at 389. Back-up police officers arrived on the scene, handcuffed Graham, and ignored or rebuffed attempts to explain and treat Graham's condition. *Id*. at 389. During the encounter, in which the police treated him very roughly, Graham sustained multiple injuries. *Id*. The Supreme Court held that all claims that law enforcement officials have used excessive force in the course of an arrest, investigatory stop, or other "seizure" of a free citizen are properly analyzed under the Fourth Amendment's "objective reasonableness" standard, rather than under a substantive due process standard. *Id*. at 398-99. After making this purely legal determination, the Court then remanded the case to the district court for review under the objective reasonableness standard. *Id*. at 399. Thus, from the point of view of what is purely established, the *Graham* decision provides no guidance under the particular facts of this case.

Similarly, none of the other Supreme Court and Tenth Circuit decisions cited by Gallegos in his response brief address the issue of whether Frazier applied excessive force to Gallegos during the course of his arrest. Gallegos' brief does not discuss the facts of any of those cases, much less explain how they would have placed Frazier on notice that he was violating Gallegos' constitutional rights.

Because Gallegos has failed to meet his burden to show that the law prohibiting Frazier's conduct was clearly established, the Court need not reach the other prong of the qualified immunity analysis—whether Frazier violated Gallegos' Fourth Amendment right to be free from the use of excessive force. Accordingly, the Court concludes that Frazier is entitled to qualified immunity, and Gallegos' Fourth Amendment excessive force claim will be dismissed.

## II.     DEPRIVATION OF TIMELY MEDICAL CARE

"[D]eliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment's proscription of cruel and unusual punishments. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Under the Fourteenth Amendment due process clause, "pretrial detainees are . . . entitled to the degree of protection against denial of medical attention which applies to convicted inmates" under the Eighth Amendment. *Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir. 1985). Claims of denial of medical treatment by pretrial detainees are evaluated under the Due Process Clauses of the Fifth and Fourteenth Amendments, which prohibit the defendants from undertaking acts that amount to punishment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). A claim for inadequate medical attention will be successful if the plaintiff shows "'deliberate indifference to serious medical needs.'" *Estate of Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

Deliberate indifference "involves both an objective and a subjective component." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quotation omitted). For the objective component, a prisoner or detainee must provide "evidence that the deprivation at issue was in fact sufficiently serious." *Id*. (quotation omitted). The subjective component requires "evidence of the prison official's culpable state of mind," which may be fulfilled by showing that the official "[knew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference." *Id*. (brackets and quotation omitted). This "standard lies somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id*. at 752 (quotation omitted).The Supreme Court has warned that "an inadvertent failure to provide adequate medical care" does not rise to a constitutional violation. *Estelle*, 429 U.S. at 105-06.

Here, Gallegos has again failed to meet his burden to show that the law was clearly established that Frazier violated his right to timely medical care. As with his excessive force claim, Gallegos' response brief enumerates general legal principles extracted from Supreme Court opinions but makes no effort to examine the facts of a single case that he cites and analogize those facts to the ones presented here. Thus, Gallegos has failed to show that Frazier should have been on notice that his actions violated Gallegos' due process right to timely medical treatment. As discussed above, Supreme Court precedent places that burden squarely upon Gallegos' shoulders—it is not the purview of this Court to make his arguments for him. Accordingly, the Court concludes that as a result of Gallegos' failure to meet his burden, Frazier is entitled to qualified immunity for Gallegos' claim of deprivation of timely medical care.

## CONCLUSION

In light of the foregoing,

**IT IS HEREBY ORDERED** that *Motion for Summary Judgment On the Basis of Qualified Immunity* [Doc. 54] is **GRANTED**, and Defendant Jared Frazier is entitled to qualified immunity on Plaintiff's claims for (1) violation of the Fourth Amendment right to be free from the use of excessive force, and (2) violation of the Fourteenth Amendment right of a detainee to timely medical care.

_____
**UNITED STATES DISTRICT JUDGE**